**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000132
25-MAR-2024
10:59 AM
Dkt. 125 SO**

NO. CAAP-18-0000132

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

KIYOSHI KAWAGUCHI,
Plaintiff/Counterclaim Defendant-Appellant,
v.
EVELYN WONG, in her capacity as the appointed
Personal Representative of the Estate of EVELYN K. SCHOLES
and the sole Trustee of the restated The Scholes Family Trust
dated September 18, 2003; EVELYN WONG, as Trustee of the
restated The Scholes Family Trust dated September 18, 2003,
Defendants/Counterclaimants-Appellees,
and
JOHN DOES 1019; JANE DOES 1-10; and DOE ENTITIES 1-10,
Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-0743)

SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Wadsworth, JJ.)

Plaintiff/Counterclaim Defendant-Appellant Kiyoshi

Kawaguchi (**Kawaguchi**) appeals from the January 25, 2019

Amended Final Judgment (**Amended Judgment**) entered by the Circuit

Court of the First Circuit (**Circuit Court**),[1] in favor of

Defendants/Counterclaimants-Appellees Evelyn K. Scholes (**Mrs.**

---

[1]     The Honorable Bert I. Ayabe presided.

**Scholes**) and Evelyn Wong (**Wong**), individually and as Co-Trustees of the restated The Scholes Family Trust dated September 18, 2003 (**Scholes Family Trust**) (collectively, the **Trustees**).[2]  Kawaguchi also challenges the Circuit Court's:  (1) February 7, 2018 Amended Order Granting [the Trustees'] Non-Hearing Motion for Award of Attorneys' Fees and Costs (**Amended Fees Order**); (2) October 19, 2017 Order Granting Motions in Limine Nos. 3-4 (**Order Granting Motions *in Limine***); (3) October 19, 2017 Order Granting Motion to Use Perpetuation Deposition Testimony of [Mrs. Scholes] and Excuse Her from Attending Trial Due to Her Advanced Age, Illness, and Infirmities (**Order re Perpetuation Deposition**); (4) December 18, 2017 Findings of Fact [(**FOFs**)], Conclusions of Law [(**COLs**)], and Judgment in Favor of [the Trustees] and Against [Kawaguchi] (**FOF/COL/Judgment**); (5) September 27, 2017 Order Granting [Trustees] Motion to Strike [Kawaguchi]'s Jury Demand (**Order Striking Jury Demand**); (6) December 8, 2016 Order Re: Motion for Partial Summary Judgment (**First Order re PSJ**);[3] (7) February 16, 2017 Order Granting Motion for Judgment on the Pleadings and/or for Partial Summary Judgment as to Counts V-VII (**Second Order re PSJ**); (8) January 8, 2016 Order Re:  Motion to Dismiss First Amended Complaint; and (9) October 2, 2015 Order

_____

[2]     Pursuant to this court's November 24 2023 order, Wong, as personal representative of the Estate of Mrs. Scholes and the sole trustee of the Scholes Family Trust, is substituted for Mrs. Scholes.  For clarity, we nevertheless refer to Mrs. Scholes herein.

[3]     The Honorable Karl K. Sakamoto presided.

Granting in Part and Denying in Part [Kawaguchi]'s Motion for Leave to File First Amended Complaint.

Kawaguchi raises four points of error on appeal, contending that the Circuit Court erred in: (1) denying Kawaguchi his right to a jury trial on his unjust enrichment claim or, alternately, if Kawaguchi's unjust enrichment claim was not entitled to a jury trial, the court erred in awarding the Trustees attorneys' fees; (2) granting the Trustees partial summary judgment on Kawaguchi's breach of contract claim and claims arising from his denial of execution of a 2003 deed; (3) allowing Mrs. Scholes to testify via a perpetuation deposition; and (4) crediting the Trustees with rent not paid by Kawaguchi from 1990 through 2014.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Kawaguchi's points of error as follows:

We will address Kawaguchi's arguments concerning the Circuit Court's summary judgment rulings before we address the striking of Kawaguchi's demand for a jury trial.

(1) Kawaguchi argues that the Circuit Court erred in dismissing his breach of contract claim because there was evidence of a contract between Kawaguchi and Mr. and Mrs. Scholes (Kawaguchi's mother and her husband) (the **Scholes**), whereby the Scholes would transfer the subject Property (**Property**) to

Kawaguchi in exchange for him making improvements to the Property. The Trustees moved for summary judgment on this claim on the grounds that Kawaguchi could not establish essential terms of the purported oral agreement.

To be enforceable, a contract must be certain and definite as to its essential terms, and a party seeking to enforce an oral contract to convey real property must prove its existence and terms by clear and convincing evidence. Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (1977). A binding contract requires "a meeting of the minds on all essential elements or terms." Earl M. Jorgensen Co. v. Mark Constr., Inc., 56 Haw. 466, 470, 540 P.2d 978, 982 (1975) (citations omitted).

The Circuit Court dismissed the breach of contract claim with prejudice based on the complete lack of essential terms, including how title to the Property would supposedly transfer to Kawaguchi. The only evidence in support of an agreement was Kawaguchi's Declaration stating that, sometime between 1980 and 1985, the Scholes asked him to improve the Property, and in consideration for that, Kawaguchi would be given the Property. Kawaguchi averred that, although it was unstated, it was "understood" that he would get the Property after they died. At the hearing on the summary judgment motion, the Circuit Court noted, for example, that there was no evidence of how title would pass to Kawaguchi. Upon review of, *inter alia,* Kawaguchi's Declaration, we conclude that the Circuit Court did not err in

4

granting summary judgment against Kawaguchi on the breach of contract claim.

Kawaguchi further argues that the Circuit Court erred in granting partial summary judgment in favor of the Trustees on Counts V-VII[4] of the First Amended Complaint because there were clearly disputed questions of fact on the issue of whether or not Kawaguchi had signed the August 2003 Deed. Count VI seeks a declaratory judgment determining, *inter alia*, that the signature on the August 2003 Deed is not Kawaguchi's and Kawaguchi did not intend to or agree to divest himself of his interest in the Property. Pursuant to Hawaii Revised Statutes (**HRS**) § 632-1(a) (2016), circuit courts can award declaratory relief where an actual controversy exists between contending parties. Here, in his Declaration, Kawaguchi specifically denies under oath that his signature was on the Deed. Kawaguchi also asserts that his signature does not appear in the notary public's record book.[5]

The Trustees argue that summary judgment was properly granted as to Counts V-VII on the grounds that these counts assert remedies, rather than legally-cognizable claims, and that the First Amended Complaint fails to state a claim for fraud with

---

[4]     Count V sought Rescission of the 2003 Deed, Count VI was for Declaratory Relief that the 2003 Deed did not divest Kawaguchi of any interest in the Property, and Count VII was for Injunctive Relief prohibiting Kawaguchi's removal from the Property.

[5]     Although the notary public avers that she does not recall the transaction, in accordance with her customary and uniform practice, she would not have notarized the document without verifying each signatory's identity and any absence of an entry for Kawaguchi in her notary book would have been the result of an oversight.

particularity pursuant to Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 9(b).  However, the First Amended Complaint alleges, *inter alia*, that in 1992, by Warranty Deed, Kawaguchi received an interest as a joint tenant in the Property, that in August of 2003, a Warranty Deed was signed and recorded transferring his interest in the Property, that he did not sign the August 2003 Warranty Deed or consent to divesting his interest in the Property, that he received no consideration for his interest in the Property, and that he seeks a declaratory judgment finding and concluding that the signature on the August 2003 Deed is not his.

The Trustees broadly argue that a claim for forgery sounds in fraud and must state with specificity the "who, what, when, where, and how" of the alleged forgery.[6]  The only allegation that is perhaps somewhat lacking is "who" allegedly and specifically signed the August 2003 Deed, if not Kawaguchi. Given the declaratory nature of Kawaguchi's claim, we cannot conclude that Kawaguchi's failure to identify the particular individual who allegedly signed his name to the August 2003 Deed renders his allegations to be insufficient.  Whether or not the signature on the August 2003 Deed was a forgery was a question of fact.  See Iaea v. Iaea, 59 Haw. 648, 649, 586 P.2d 1015, 1016

---

[6]     "'Forgery' is defined as 'a false or altered document made to look genuine by someone with the intent to deceive.'"  Scholes v. Kawaguchi, 142 Hawaiʻi 360, 368 n.9, 419 P.3d 1029, 1037 n.9 (Haw. App. 2017) (citation omitted).

(1978). Here, Kawaguchi's Declaration raised a genuine issue of material fact with respect to the allegations stated in Count VI of the First Amended Complaint.

Counts V and VII state certain equitable remedies that Kawaguchi seeks with respect to his claim that he did not sign the August 2003 Deed. The Circuit Court did not err in dismissing Counts V and VII as independent claims. However, the dismissal of them "with prejudice" implies that Kawaguchi may not, for example, seek to rescind a forged deed, to have it declared void and/or voidable, as set forth in Counts V, and/or to enjoin further conveyances of the Property, as set forth in Count VII. We conclude that the Circuit Court erred in dismissing Counts V and VII without stating that their dismissal is without prejudice to any remedy that might be sought upon establishment of the claim alleged in Count VI.

(2) Next, we return to Kawaguchi's argument that he was improperly denied his right to a jury trial because Count III was not a purely equitable claim. In addition to repeating and realleging previous allegations, Count III (Unjust Enrichment) states:

> Defendants will be unjustly enriched if they are not required to pay [Kawaguchi] for the increase in value which [Kawaguchi's] work caused to the [Property], the interest which he held in the [Property] prior to the recordation of the 2003 Deed, or to transfer the [Property] back to him.

Article 1, section 13 of the Hawaiʻi Constitution mandates that "[i]n suits at common law where the value in controversy shall exceed five thousand dollars, the right of

trial by jury shall be preserved." In re Marn Fam., 141 Hawaiʻi 1, 8, 403 P.3d 621, 628 (2016). "The test to determine whether a suit is at common law is . . . whether the cause of action seeks legal or equitable relief." Id. (citation omitted). The nature of the issues and the "legal" or "equitable" remedy sought determines whether a jury trial is warranted. See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71, 502 U.S. 93, 97 (1991).

Kawaguchi cites Porter v. Hu, 116 Hawaiʻi 42, 169 P.3d 994 (App. 2007), for the proposition that unjust enrichment claims can arise in contract and argues that his unjust enrichment claim here arose in contract. Kawaguchi's unjust enrichment claim sought damages for an "increase in value" of the Property due to his work or the value of the interest he had in the Property prior to the August 2003 Deed.[7] Neither of these alternatives sounds in contract under the facts and circumstances alleged in this case. We conclude that the Circuit Court did not err in rejecting his argument that he was entitled to a jury trial on Count III.[8]

Kawaguchi alternatively argues that if Count III is not contractual in nature, attorneys' fees should not have been

---

[7]  His reference to a transfer of the Property back to him – in other words, rescission or voiding of the August 2003 Deed – clearly implies an equitable remedy, not a legal one.

[8]  The Circuit Court dismissed Count VI prior to striking Kawaguchi's demand for a jury trial. Therefore, no arguments were before the Circuit Court concerning, and the Circuit Court did not rule on, whether Count VI is triable to a jury. This Summary Disposition Order does not address the issue of whether Kawaguchi may be entitled to trial by jury on Count VI.

awarded against him pursuant to HRS § 607-14 (2016). This argument ignores Count I of his First Amended Complaint seeking specific performance or damages for breach of contract. This alternative argument is also without merit.

(3) Kawaguchi argues that the Circuit Court erred in its Order Re Perpetuation Deposition because the Trustees' support for the motion included declarations from medical experts that were then ten months old, and Kawaguchi had no chance to cross-examine the experts.

HRCP Rule 32 governs the use of depositions in court proceedings, and provides that the deposition of a witness may be used by a party for any purpose if the court finds, *inter alia*, that the witness is unable to attend or testify because of age, illness, or infirmity. HRCP Rule 32(a)(3)(C). Here, the Circuit Court found, based on her doctor's declaration testimony, that Mrs. Scholes was 90 years old, had advanced Parkinson's disease, required 24-hour supervision, and was at serious risk for falls. Kawaguchi does not contest any of these findings, but argues that he should have been allowed to cross-examine the doctor-declarant, as well as Mrs. Scholes's therapist. Kawaguchi further argues that these findings are insufficient to support the Circuit Court's determination that Mrs. Scholes was unable to testify at trial, and its decision to allow the transcript of Mrs. Scholes's perpetuation deposition at trial. This argument is without merit. Mrs. Scholes's advanced age, serious illness,

and other infirmities were sufficient bases to support the exercise of the Circuit Court's discretion under HRCP Rule 32(a)(3)(C).

(4) Finally, Kawaguchi argues that after the completion of the bench trial on the remaining issues, the Circuit Court erred in finding, in FOF 30(J)(vii), that benefits flowed to Kawaguchi for rent not paid by him from 1990-2014, and offset them against the value of Kawaguchi's work on the Property. Kawaguchi contends that the law in Hawaii is clear that where a service is provided by a member of the family, the service is presumed to be gratuitous absent an express contract, and there was no evidence that the Scholes asked Kawaguchi to pay rent. Kawaguchi fails to identify where in the record he made this argument or objected to the Circuit Court's consideration on imputed rents as an offset. This argument will be disregarded in accordance with Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(iii).

For these reasons, the Circuit Court's January 25, 2019 Amended Judgment is affirmed in part and vacated in part. The Circuit Court's dismissal of Count VI is vacated, and the dismissals of Counts V and VII are vacated to the extent that the dismissals would limit Kawaguchi's remedy with respect to Count VI. The Amended Judgment is otherwise affirmed. This case is

10

remanded to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, March 25, 2024.

On the briefs:

Samuel P. King, Jr.,
for Plaintiff/Counterclaim
 Defendant-Appellant.

John D. Zalewski,
Michelle J. Chapman,
(Case Lombardi & Pettit),
for Defendants/Counterclaimants-
 Appellees.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge